# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM J. POLSTER,

                Plaintiff,

v.

CITY OF WAUWATOSA, JEFFREY NEWMAN, RUSSELL RICHARDSON, THOMAS ORLOWSKI, JENNIFER FARINA, PHONEXAY YOTHSACKDA, and JEFFREY FARINA,

                Defendants.

Case No. 17-CV-3-JPS

**ORDER**

**1.    INTRODUCTION**

This action arises from Plaintiff William J. Polster's arrest and detention by certain City of Wauwatosa (the "City") police officers on June 26, 2016. *See* (Docket #1). Plaintiff was detained and then arrested for carrying firearms near a school, and claims that the incident violated his rights under the First, Second, and Fourth Amendments. *Id.* On September 1, 2017, Defendants filed a motion for summary judgment. (Docket #22). Plaintiff responded on October 2, 2017, (Docket #28), and Defendants replied on October 16, 2017 (Docket #32). For the reasons explained below, Defendants' motion must be denied.

**2.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides the mechanism for seeking summary judgment. Rule 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

3. **FACTUAL BACKGROUND**

   3.1 **Relevant Facts**

Upon review of the parties' factual briefing, the Court finds that the following facts are material to Defendants' motion.[1] The Court construes the facts in Plaintiff's favor, as required by the standard of review, but nevertheless notes the parties' disputes where appropriate.[2]

Plaintiff is a self-described "Second Amendment and civil right activist," and considers himself a rational, reasonable person possessing

---

[1] All facts are drawn from the parties' factual briefing unless otherwise noted. (Docket #29 and #34). Along with their reply brief, Defendants offered a reply in support of their own statement of facts. (Docket #33). This is not permitted under this District's local rules, and has been entirely disregarded. *See* Civil L. R. 56(b)(3)(B).

[2] Both parties have asserted a number of one-sentence "disputes" on the basis that the opposing party's proposed fact is not supported by the evidence cited. *See, e.g.,* (Docket #29 at 4, ¶ 16; Docket #34 at 10, ¶ 40). These sentences do not cite any evidence themselves, nor do they explain *why* the cited material does not support the fact. The parties cannot foist their obligations on the Court, which would be left to scour the record to answer the "why" question for itself. These attempted disputes have, therefore, been largely ignored.

sound judgment. (Docket #29 at 12; Docket #34 at 1). He has had a concealed carry ("CCW") license from the state of Wisconsin since 2012. (Docket #29 at 3). On June 26, 2016, he went to Madison Park (the "Park") in the City, openly carrying an AK47 pistol and a Glock pistol (as well as a large knife).[3] In particular, the AK47 pistol was slung over Plaintiff's shoulder and rested against his stomach. Plaintiff was motivated to go to the Park to protest the shooting of an armed man by police just three days prior. Plaintiff also desired "to see 'an appropriate police response,' and whether his First, Second and Fourth Amendment constitutional rights would be respected." (Docket #29 at 3).

While at the Park, Plaintiff sat at a table and browsed his cell phone. At all times relevant, Plaintiff was within 1,000 feet of Madison Elementary School. Plaintiff says he was not being disruptive and never reached for his guns. Defendants counter that they received a citizen complaint about Plaintiff's presence. The citizen called 911 because she feared for her safety and that of her children, who were playing in the Park. Jeffrey Newman ("Newman") was the first City officer to respond to the call, and was accompanied by a number of officers from the Milwaukee Police Department.

As he approached, Newman observed adults and children playing near where Plaintiff was sitting. Newman retrieved his AR15 rifle and approached Plaintiff, asking him to put his weapons down. Plaintiff refused, stating that he would not touch his weapons while the officers had

---

[3]For those unfamiliar with the pistol variant of the AK47, it looks similar to the assault rifle of the same name, but with the stock removed and the barrel shortened. Plaintiff's AK47 pistol was equipped with a drum magazine which carries more ammunition than the standard magazine. (Docket #30-3 at 16:2-9).

theirs at the ready.[4] Newman asked Plaintiff what he was doing at the Park, and Plaintiff responded that he was simply sitting at the table. Newman asked Plaintiff for identification. Plaintiff asked whether he was required to provide identification, and Newman conceded that he was not. Newman then asked if Plaintiff had a CCW license. Plaintiff countered that he did not think one was necessary, because he was not carrying any concealed weapons. Newman did not insist on a direct answer to his question, but instead continued the conversation about Plaintiff's armament. Plaintiff did not actually confirm whether or not he had a CCW license.

Newman asked Plaintiff to wait for a moment until his lieutenant could arrive. While they waited, Newman and Plaintiff continued to converse. During this time, Newman acknowledged that Plaintiff did not appear to be causing a disturbance in the Park. Other officers showed up and surrounded Plaintiff, most with their guns drawn. After about a minute, City officer Lieutenant Jeffrey Farina ("Farina") arrived. Newman told Farina that Plaintiff was "exercising his right to open carry," but did not tell Farina anything else.

Farina asked Plaintiff if he knew there was a school near the Park and how that affected his right to carry a firearm. Plaintiff stated that he did not know there was a school nearby. Defendants note that there are a number of signs indicating the presence of a school along the only road into the Park. Plaintiff denies seeing those signs. (Docket #26-1 at 16:15-20).

Farina asked Plaintiff, "you see all the attention you're getting[,] is this what you wanted?" (Docket #34 at 14). He did not directly ask Plaintiff

---

[4]From this point on, the encounter in the Park was captured on video. *See* Exhibit I to Affidavit of Ben J. Slatky, (Docket #30). Plaintiff was wearing a Go-Pro camera attached to his hat. (Docket #29 at 6).

if he had a CCW license. Farina decided to arrest Plaintiff for possessing a firearm within 1,000 feet of a school. During this portion of the encounter, City officer Russell Richardson ("Richardson") pointed his pistol at Plaintiff, commanding Plaintiff to comply with the officers' orders. The officers disarmed Plaintiff, searched him, and put him in a squad car. The parties dispute what was found in Plaintiff's wallet. Plaintiff says the officers discovered his driver's license, and must have seen his CCW license which was nearby, while Defendants claim that they did not see the CCW license at that time.

While being transported to the police station, Plaintiff told City officer Phonexay Yothsackda ("Yothsackda") that he had a CCW license. Yothsackda found the license while searching Plaintiff during the booking process. He then gave the license to Newman. Newman believed Plaintiff's CCW license was valid and knew that Plaintiff's possession of the license was "significant." (Docket #30-4 at 20:3-17).[5] Richardson also came to know of the license at some point.

About an hour later, Plaintiff was interrogated by Newman, and they discussed the charge against him. Plaintiff stated that the school zone exclusion rule did not apply to him because he had a CCW license. Newman said that "as far as I've been told and from what I read in the statutes, it does not exempt with the concealed carry permit, so you cannot carry in a school zone." (Docket #34 at 12). Newman referred the matter to the Milwaukee County District Attorney for prosecution, but the district attorney declined. Plaintiff was then released from custody, about two-and-

---

[5]Plaintiff's counsel did not seek elaboration on why Newman thought the license was "significant." *See* (Docket #30-4 at 20:3-21:23).

a-half hours after the initial encounter and about an hour after his interrogation. Plaintiff's belongings were returned to him three days later.

4. **ANALYSIS**

Plaintiff asserts six causes of action: 1) Defendants' search and seizure of Plaintiff was in violation of the Fourth Amendment; 2) Plaintiff's arrest for a firearms violation and the seizure of his guns was in violation of the Second Amendment; 3) Plaintiff was engaged in symbolic speech in the Park and Defendants' conduct chilled that speech, violating the First Amendment; 4) false arrest; 5) failure to intervene by the individual officers; and 6) asserting a right to indemnification against the City for the wrongful conduct of its officers acting within the scope of their employment. (Docket #1 at 3-7). Defendants, in approximately thirteen total pages of argument, contend that each of these claims must be dismissed. (Docket #23 at 3-8).

Defendants go on, however, only to argue against their alleged violation of Plaintiff's Fourth Amendment rights. *Id.* at 3-6. Defendants assert that they had reasonable suspicion to detain Plaintiff, and probable cause to arrest him, for carrying a firearm in a school zone. *Id.*[6] Even if the Court agreed, this finding would at best only directly bear on Count One (Fourth Amendment search and seizure), Count Four (false arrest), and a

---

[6]This is itself arguable. Defendants' positions on the Fourth Amendment issues are confused and brief, making little attempt to distinguish between the reasonable suspicion and probable cause analyses. The Court has done its best to account for Defendants' reasoning in this Order, but to the extent Defendants believe that something was missed, they have only themselves to blame. *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990) ("This court is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case."); *Gold v. Wolpert*, 876 F.2d 1327, 1333 (7th Cir. 1989). Plaintiff's submissions are certainly not the picture of clarity, but it is Defendants who seek summary judgment and face its daunting standard of review.

portion of Count Five (failure to intervene to prevent those constitutional violations). Defendants suggest that "all of Plaintiff's claims are premised on the alleged unlawful stop, detention and arrest. Had the officers not responded to the police call and dispatch, conducted the investigation in the park, and not arrested the Plaintiff, the Plaintiff could not bring any of his other claims based on the First or Second Amendment." (Docket #32 at 7).

The Court need not determine whether this statement is true. When viewing the facts in a light most favorable to Plaintiff, Defendants lacked reasonable suspicion to seize Plaintiff or probable cause to arrest him. The Fourth Amendment protects Americans from unreasonable searches and seizures. *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000). It is implicated "when a police officer uses physical force or a show of authority to restrain the liberty of a citizen." *Id.* The most obvious form of seizure is arrest, which must be supported by "probable cause to believe that a person has committed or is committing a crime." *Id.*

Since 1968, police officers have been empowered to utilize another, less intrusive form of seizure. *Terry v. Ohio*, 392 U.S. 1, (1968). *Terry* permits officers to perform brief investigatory stops of people when the officers reasonably suspect that the subject person "is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). In other words, *Terry* stops need not be justified by probable cause; reasonable suspicion is "something less than probable cause and more than a hunch." *Swift*, 220 F.3d at 506. Whether such reasonable suspicion exists is an objective inquiry which "involves a consideration of the totality of circumstances known to the officers at the time of the stop." *Id.* at 506 (quotation omitted). For reasonable suspicion to be found, the seizing

officer must be able to "point to specific and articulable facts that suggest unlawful conduct." *United States v. Miranda-Sotolongo*, 827 F.3d 663, 666 (7th Cir. 2016) (quotation omitted).

Defendants do not attempt to peg the juncture at which seizure occurred in this case, but they could not dispute that it began at least when Newman and the other officers first confronted Plaintiff with guns drawn. *United States v. Smith*, 794 F.3d 681, 684 (7th Cir. 2015) (a "seizure" occurs when "police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business," and "the threatening presence of several officers [and] display of their weapons" are factors in this analysis). (quotations omitted). At that point, there was no objective basis to believe that Plaintiff had violated any law. Wisconsin generally permits open carrying of firearms in public. Wis. Stat. § 947.01(2). As relevant here, there is an exception for carrying a gun within 1,000 feet of a school, when the bearer knows or has reasonable cause to believe they are near a school. *Id.* § 948.605(2)(a). There is an exception to this exception as well—those who possess a valid CCW license can carry a firearm within a school zone so long as they are not actually on school grounds. *Id.* § 948.605(2)(b)(1r). Thus, as a CCW license holder, Plaintiff's presence in the Park did not violate any law.

Defendants nevertheless cite various reasons why they had reasonable suspicion of unlawful conduct. None has merit. First, they assert that Plaintiff's heavily-armed presence in the Park was dangerous and disturbing to other citizens. However, the only basis Newman advanced for confronting Plaintiff was his presence near a school and potential violation of Section 948.605, and not a violation of any other law (such as disorderly conduct or the like). (Docket #30-4 at 13:5-13). Second, Defendants maintain

that Plaintiff should have known he was within 1,000 feet of a school in light of the signage along the road which gives access to the Park. As explained above, if true, this would support a potential violation of the school zone rule. However, Plaintiff disputes this fact and an assessment of his credibility must be left to a jury.

Finally, Defendants fault Plaintiff for failing to produce his CCW license or at least tell Newman that he had one upon their initial encounter.[7] This position impermissibly shifts the burden of reasonable suspicion; Newman must come forward with articulable facts which support his belief that Plaintiff was in violation of the school zone rule. Plaintiff could not have violated the school zone rule until he 1) knowingly carried a gun within 1,000 feet of a school, and 2) did so without a CCW license. The former was clear, but Newman had no reasonable basis upon which to suspect the latter. Without obtaining confirmation on Plaintiff's status as a CCW license holder, Newman could not know whether Plaintiff's conduct was unlawful.

Of particular importance to the Court is the amount of time Defendants had available to make this inquiry. As shown in the Go-Pro video, Plaintiff and Defendants were standing still in the Park, speaking in mild, conversational tone about the situation. There were no emergent circumstances that warranted seizing Plaintiff prior to determining his CCW licensure. Though Defendants repeatedly claim that Plaintiff outright

---

[7] It is important to note that this discussion is premised on the jury finding in Defendants' favor with respect to the knowledge component of the school zone rule. If they conclude that Plaintiff did not have reason to know he was near Madison Elementary School, then it does not matter whether he had a CCW license.

refused to say that he had a CCW license, when viewing the facts in Plaintiff's favor, it is Defendants who failed to make an appropriate inquiry on that point, despite having ample opportunity to do so. A jury could find, then, that Newman lacked reasonable suspicion that the rule was violated.[8]

Though Defendants did not cite the principle, the Court notes that police officers can make reasonable mistakes of both fact and law and still

---

[8]Defendants stress that their efforts to confront Plaintiff were motivated by their desire to protect the community. (Docket #32 at 2, 6). While admirable, they could have approached the situation in another way, which would both serve that function and respect Plaintiff's Fourth Amendment rights: the consensual encounter. In addressing reasonable suspicion in the context of carrying concealed firearms, the Eighth Circuit explained the idea:

> We do not underestimate the importance of ferreting out violent offenders who unlawfully carry firearms in public, and the value of protective frisks in guarding the safety of law enforcement officers and others who may be in harm's way. *See Terry*, 392 U.S. at 23–24[.] But as we noted in [*United States v. Hughes*, 517 F.3d 1013, 1018 (8th Cir. 2008)], "[b]eing stopped and frisked on the street is a substantial invasion of an individual's interest to be free from arbitrary interference by police," and the police have "less invasive options" for "identifying the perpetrators of crime." Most obviously, Officer Hasiak could have initiated a consensual encounter, for which no articulable suspicion is required, and which "may both crystallize previously unconfirmed suspicions of criminal activity and give rise to legitimate concerns for officer safety." *United States v. Davis*, 202 F.3d 1060, 1063 (8th Cir.), *cert. denied*, 531 U.S. 883 . . . (2000). In *United States v. Stewart*, 352 Fed. Appx. 322, 323–24 (11th Cir. 2009), for example, defendant was seen running in a high crime area and apparently holding a heavy object in his pocket against his body, but he was not arrested until the officers asked if he had a gun, and he said "Yes, I'm dirty," and then admitted not having a permit. *See also United States v. Maher*, 145 F.3d 907, 908–09 (7th Cir.1998).

*United States v. Jones*, 606 F.3d 964, 968 (8th Cir. 2010). A consensual interaction with Plaintiff could have supplied the crystallization Newman required, and would have eliminated the basis for this lawsuit altogether.

present a valid basis for reasonable suspicion. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014). The Court is loath to invoke this rule where the Defendants did not argue for its application. In any event, it does not help them. The Seventh Circuit holds that "*Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an *unambiguous* statute." *United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016). Defendants do not contend that the school zone rule is ambiguous. Further, to the extent Newman made a mistake of law—Newman's statement during Plaintiff's later interrogation suggests that he did indeed misapprehend the school zone rule—that does not mean that the rule is ambiguous. Instead, Newman simply failed to fully investigate the facts which were knowable. He had an opportunity to confirm whether Plaintiff had a CCW license, and in fact asked a question to that effect, but did not obtain a direct answer. A jury must decide whether Newman's suspicion of a school zone violation was nevertheless reasonable.

For similar reasons, a jury could also find that Plaintiff's arrest was not supported by probable cause. Again, "[a] warrantless arrest is constitutionally permissible if supported by probable cause." *United States v. Paige*, 870 F.3d 693, 699 (7th Cir. 2017). Probable cause arises when "the totality of the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, [to] believ[e], in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* at 699-700 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Unlike Newman, who kept his suspicion of a school zone violation to himself, Farina raised the issue directly. Unfortunately, like Newman,

Farina did not complete the necessary and brief investigation required to confirm that such a violation had actually occurred. A jury could find that Farina lacked probable cause to arrest Plaintiff for violating a law from which he, a CCW licensee, was specifically exempted.[9] Additionally, even if Farina reasonably believed Plaintiff had violated the school zone rule, this could not supply probable cause to actually arrest him. Such conduct would be punished by a "Class B forfeiture." Wis. Stat. § 948.605(2)(a). Wisconsin law empowers police officers to arrest those suspected of crimes. Wis. Stat. § 968.07(1)(d). Forfeitures are not crimes, and so Plaintiff could not be subject to arrest at that time. Wis. Stat. § 939.12 ("A crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime.").[10]

Defendants assert that even if their actions violated Plaintiff's constitutional rights, they are shielded by qualified immunity. That doctrine protects government officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate

---

[9]Defendants assert that Farina could rely on Newman's earlier inquiry about the CCW license based on the "collective knowledge" doctrine. *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). Even assuming the doctrine made sense here—Newman himself did not know what Plaintiff's CCW license status was—it was relevant and available to Defendants in their opening brief. Their failure to raise it there means the argument is waived. See *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913-14 (7th Cir. 2011); *Kenall Mfg. Co. v. H.E. Williams, Inc.*, No. 09-C-1284, 2012 WL 4434370 at *3 (N.D. Ill. Sept. 24, 2012) ("[A]rguments and evidence that could have been raised in the opening brief but are first raised in a reply brief are generally deemed waived.") (citing *Judge v. Quinn*, 612 F.3d 537, 542 (7th Cir. 2010)); *Citizens Against Ruining the Env't v. E.P.A.*, 535 F.3d 670, 675 (7th Cir. 2008) ("It is improper for a party to raise new arguments in a reply because it does not give an adversary adequate opportunity to respond.").

[10]Defendants make no attempt to respond to Plaintiff's argument on this point, so the Court treats it as conceded.

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Put simply," says the Supreme Court, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once the defense is raised, the plaintiff bears the burden to defeat it. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015).

To overcome an assertion of qualified immunity, the plaintiff must first proffer facts which, if believed, amount to an actual violation of his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Easterling v. Pollard*, 528 F. App'x 623, 656 (7th Cir. 2013). As the above discussion shows, Plaintiff has achieved this. Next, the plaintiff must show that the violation of his constitutional rights was "clearly established under applicable law at the time and under the circumstances that the defendant official acted." *Easterling*, 528 F. App'x at 656 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A right is clearly established when its contours are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and alterations omitted). Courts should "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). In January of this year, the Supreme Court emphasized "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017). The "clearly established law" must instead "be particularized to the facts of the case." *Id.*

To evaluate the "clearly established law" element, the Court must define the relevant constitutional right at issue as framed by the facts presented. Defendants posit that the proper framing is

> a case where police officers were responding to a call for help at a park where there were adults and children nearby, due to the presence of a man who was openly carrying firearms; the location had been the scene of a police shooting just days prior; officers notified Plaintiff, who refused to identify himself, that he was located in a school zone, and asked at least twice if he had a concealed carry permit; Plaintiff's only response was that he didn't think it was relevant.

(Docket #32 at 7). The Court cannot accept this formulation. Defendants' description does not coincide with the evidence as construed in Plaintiff's favor. *See Mordi v. Ziegler*, 770 F.3d 1161, 1164 (7th Cir. 2014). Rather, with an appropriate view of the facts, the right in question is whether Defendants should know that arresting a person for violating the school zone rule was proper when they failed to fully investigate whether such a violation had actually occurred.[11] This is clearly impermissible under even the generic *Terry* standard, as explained above. Further, their misunderstanding of the unambiguous school zone rule does not serve to adjust the formulation in their favor. *See Stanbridge*, 813 F.3d at 1037-38 ("[The officer] simply was wrong about what the provision required, yet 'an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce.'") (quoting *Heien*, 135 S. Ct. at 539-40).

---

[11]Indeed, Defendants' formulation is not consistent with their other arguments. Defendants maintain that their detention and arrest of Plaintiff was for violating the school zone rule, not for any of the other facts from their above-quoted narrative. See (Docket #32 at 3) ("Under these facts, the Defendant officers had reasonable suspicion that Plaintiff was violating Wisconsin law relative to carrying guns within a school zone.").

Given this controlling precedent, and an assessment of the relevant right in accordance with the standard of review, it was "beyond debate" at the time Defendants acted, their conduct violated Plaintiff's Fourth Amendment rights. *al-Kidd*, 563 U.S. at 741. In other words, if Plaintiff's version of events is true, "every reasonable official" in Defendants' position "would have understood that what he is doing violates [Plaintiff's] right[s]." *Reichle*, 132 S. Ct. at 2093 (internal quotation marks and alterations omitted). Defendants cannot, therefore, find shelter in the qualified immunity defense.

5.  **CONCLUSION**

When viewing the facts most favorably to Plaintiff, he has raised a number of triable issues of fact which necessitate a jury's intervention. Defendant's motion for summary judgment must, therefore, be denied.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #22) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 3rd day of November, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge